Thank you. May it please the Court, if I can handle the housekeeping issue very quickly. As the Court's aware, this will be for the next hour and a half or so. There's going to be discussions about the McGill rule that's going to deal with preemption. In an effort to avoid duplication, I am going to very briefly address preemption, which is part of our argument. I'm going to spend most of my time on our alternative argument that the McGill rule does not apply. And that way, between all three of the arguments will be addressed. And I'd also like to reserve four minutes, if I may. All right. The McGill rule, which is the basis of the district court's opinion, does not apply to appellant-to-rent-a-center's agreement. And by the way, I'm Rob Friedman. I represent Even if it did apply, it's preempted. Accordingly, the Court should have compelled arbitration of the claims and enforced a class-action waiver and stayed the other claim. So I promised I would spend very little time on preemption, but I do want to spend a couple of minutes. We recently submitted in our citation supplemental authority, the McGovern case. And the McGovern case, although it's a district court case, does a good job summarizing what our argument is to a large degree. And that is, the Savings Clause does not apply here. And the reason the Savings Clause of Section 2 does not apply is because the defense, the McGill rule, does not apply to the revocation of any contract. It only applies to agreements that deal with waiver. Additionally, even its application, it's not neutral and it targets arbitration. And I want to point out that the McGill case in particular relies quite a bit on a 2003 California Supreme Court case, Little v. Stigler. And the McGill case is based in large part on Civil Code 3513, you can't waive laws for public benefit. Even the Little v. Otto Stigler case of 2003 notes that while waivers of claims protecting public policy are not waivable, the Court would not render that claim without a conclusion with respect to waivers in settlement agreements. That's the identical position that the McGovern case takes. In other words, while it applies to agreements, a waiver agreement, an arbitration agreement, it does not neutrally apply to settlement agreements. And the McGill rule itself is like Section 3513 on steroids. 3513 doesn't mention arbitration agreements. However, the McGill rule certainly does. Our second point of preemption before I get into why McGill doesn't apply is McGill interferes with the fundamental attributes of arbitration. That's been reiterated, Concepcion, Kindred, and most recently in Epic Systems. And that's critical, because one of the fundamental attributes of arbitration is one-on-one arbitration. And the McGill rule interferes with that. So for those reasons — Go ahead. We have a case called Sakab that I'm sure you're familiar with. Yes, Your Honor. Why doesn't that guide us here? It seems like it's the law of the circuit. And also, I think the Supreme Court denied a cert in Iskanian. So as far as we know, Sakab was correctly decided. Well, Your Honor, the Court does not have to address Sakab for this ruling for this to be reversed. And I say that because Sakab dealt with a PAGA claim. And a PAGA claim is brought on behalf of the State of California, and there are certain formalities. For example, to bring a PAGA claim, the party bringing it has to give notice to make sure the State doesn't want to bring the claim. It's also binding on the State. Additionally, the overwhelming amount of the remedies, 75 percent of the remedies, go to the State. So this is a very, very different issue. And that was fundamental in Sakab that the State of California was not a party to the arbitration agreement. Here, there is no dispute that the appellant is a party to the arbitration agreement. So Sakab is distinguishable in that regard. With respect to our alternative argument that I'm going to move to now, unless there's any other questions on preemption, the McGill rule does not apply. And the district court's opinion relies almost exclusively, in fact, exclusively on McGill. And the reason the McGill rule doesn't apply is because in McGill, there was a stipulation. There was no independent analysis of the arbitration agreement. There was a stipulation that public injunctive relief was not allowed either in court or in arbitration. And because of that stipulation, the Supreme Court made very clear, we're not doing any independent analysis of the arbitration agreement. This agreement is different. We have always maintained that the appellant may, in fact, pursue public injunctive relief in court following individual arbitration of her claims. That very distinction distinguishes McGill and means that it does not apply. The district court recognized that there was avenues for her appellant to pursue public injunction in court. And, in fact, there was a severability clause under the remedy provision, the requirement of individual arbitration. And it says, if the court makes a final determination, and by the way, in this case, there was a requirement that the court make that determination. And if the court says that there's a preclusion of enforcement of anything in paragraph D, then that claim and only that claim, claim for relief, must be severed and must be brought in court. So unlike McGill, there was an avenue for this matter to go to court. And on that basis, McGill does not apply. The court got around that by making an argument and making an interpretation of paragraph D that the reference to a particular claim for relief and only that claim only refers to claims. So to be clear, the court threw out the baby with the bathwater. The court made the determination that the arbitration agreement does not allow for public injunctive relief in any forum. And based on its interpretation of this language, the court held that, well, this language means that if you can't get the remedy for public injunctive relief, the claim must also go back to court. There's problems with the court's interpretation, however, and the court did not follow and adhere to the Federal Arbitration Act in making this interpretation. And first and foremost, all doubts must be resolved in favor of arbitration, not against it. The court ignored that principle of federal arbitration law that comes from Moses Cohen and has been repeated in so many, so many arbitration cases. Instead, the court gave a tortured interpretation that was very narrow. So the court ignored binding Supreme Court authority on that basis. There's also a factual problem with the court's analysis. The court's saying, what else could that mean, only that claim? However, paragraph D appears in a section that deals with remedies. So in a section that deals with remedies, only that remedy should have been severed out. To be clear, the underlying claims should go to arbitration. The class action waiver should be enforced. Only the remedy for public injunctive relief should stay in the court. And you're supposed to be able to do that. And is that the only remedy, then, that stays in the court, in your view? Yes, Your Honor. Every usury claim was compelled to arbitration. The other claims that were subject to the arbitration agreement that's undisputed were held back as a result. So yes, Your Honor. The only claim, and I'm appreciative that you just used the term claim, Your Honor, because our position is that the court gave an overly technical perspective on public injunctive relief. And, in fact, Your Honor, to that regard the Just let me see if I can restate what you're saying. All the claims go to arbitration, but the remedies can be split? The remedy goes, stays in the court. And, Your Honor, that's a port for that, including in Ferguson, that the underlying claims should be arbitrated individually pursuant to the arbitration agreement, and then they can come back. And if, to the extent that they win, the public injunctive relief can be addressed to the court. Obviously, Your Honors, if they lose in arbitration, it would not go back. I'm reading Judge Alsup's order. I'm on page 9 of his order, and this is, I think, some of the language that you're referring to. Judge Alsup, on line 2 of his order, quotes a line from the contract saying that after there's been awarded relief in arbitration, quote, this is now reading from the contract, that there will be no right or authority for any dispute to be brought heard or arbitrated as a class, collective, mass, private, attorney general, representative action. Judge Alsup construes that language to forbid the person, the claimant, from bringing a public injunction. Why is he wrong in reading it that way? Your Honor, Judge Alsup is correct that the arbitration agreement does forbid public injunctive relief in arbitration. What he is wrong about is that it doesn't allow for public injunctive relief in court, and that's the critical distinction we're making in McGill. In McGill, the finding was based on... No, I'm not following you. You're saying that this line that I just read forbids only arbitration of such claims? Yes, Your Honor. But it says there shall be no right or authority for any dispute to be brought, heard, or arbitrated. It sounds like arbitrated is the number three on a list of things. Your Honor, our argument is that public injunctive relief is precluded in arbitration. Our argument is also that class and collective actions are precluded, period. Our position has always been since the district court that the public injunctive relief is available back at the district court. Well, but Judge Alsup just read that language to say that that language precludes it. And I'm having trouble understanding why Judge Alsup is wrong in reading it that way. Well, Your Honor, my understanding of Judge Alsup's order is that he understood it to preclude it in arbitration, and he also held... Well, he also understood it more to the point, to preclude it and being brought as a separate lawsuit. Your Honor, would you... That's the point he was interested in. Would you point me back, Your Honor, to where you were reading in his order? Yeah. I'm on line 2 of page 9 of Judge Alsup's order, and he's quoting language. And here's the quoted language. And it's paragraph D of the arbitration. Right. Quote, there will be no right or authority for any dispute to be brought, heard, or arbitrated as a da-da-da-da-da. Well, Your Honor, we disagree with Judge Alsup's opinion. I understand that. But, Your Honor, at the same time, more importantly than that, there is a severability clause, and Judge Alsup should have applied that severability clause. So even if Judge Alsup's interpretation was that this does preclude, at the same time, he should have applied the severability clause, and he did not apply it because he gave a very narrow interpretation to the term claim. And our point, Your Honor, is his interpretation of the term claim doesn't survive the fundamental principle that all doubts are resolved in favor of arbitration. I want to point to something else, though, because I think it's critical. Judge Alsup's narrow interpretation to the term claim is also inconsistent with how this Court and even the California Supreme Court have interpreted. In Ferguson, for example, they rejected a very similar argument and said claim or remedy, they could be used the same way. Even in the McGill case, Your Honor, when referring to the public injunctive relief, which is the basis of Judge Alsup's distinction, which we believe is improper, they say the trial court ordered McGill to arbitrate claims other than those for injunctive relief. It goes on to say McGill asserted that it prohibits her from pursuing claims for injunctive relief. This narrow reading of the term claim is what deprived us of enforcing our arbitration agreements and severing the claims. Another position ---- May I? It's an odd position you're taking. You're sort of saying in for a dime, in for a dollar, except for what we then pull back out of the arbitration agreement that we crafted that we now don't want to have any traction. So help me interpret the next part of paragraph D. You'll find that on the district court's page 9 of its order, and it's around line 14. Then it goes on to say, if there is a final judicial determination that the applicable law precludes enforcement of paragraph D's limitations as to a particular claim for relief, now we're back to the word claim, then that claim must be severed from arbitration and may be brought in court. So you're splitting remedies, and it seems that the agreement is distinguishing among claims. Would you tell me how the arbitration agreement reconciles these words and claims versus relief? Yes. First and foremost, Your Honor, section D itself is a section that deals with remedies. And if you look to the very last sentence, it's saying if there's a limitation on remedies, that claim and only that claim, clearly that's an intent to limit the effect of any kind of severability. Another point ---- But what is the claim? In other words, first we're going down the road of remedies, but you can't have a remedy without a claim. Your Honor, in this case, the reference to claim for relief refers to remedies. And the point I wanted to make earlier was it's not just Renta Center appellant making this distinction. In Ferguson and in McGill, they use the term claim and remedy interchangeably when it comes to public injunctive relief. So only if the court were determined there is no ambiguity, there's no other way to read this, do we lose to the ---- Well, wait a minute. I understand that you're trying to give us the presumption in favor of arbitration, but now you're trying to get a presumption in favor of your reading of your own contract. Your Honor, the presumption in favor of arbitrability means as far as contract interpretation as well. No, I don't think that that's right. I will interpret an ambiguity in a contract against the drafter. Your Honor, that would be ignoring one of the fundamental principles of the FAA. Does that not ---- Wait a minute. Are you telling me that if we're talking arbitration, that your client or someone in your client's position can draft an ambiguous contract and then take advantage of the ambiguity to interpret it in your way? I don't think that can be right. Your Honor, under Moses Cone, any ambiguities must be resolved in favor of arbitration. I understand that. And the maxim of State contract law that it's interpreted against a drafter is an ambiguous contract. However, even under Pearson Dental, a California Supreme Court case, the Court held it should be ---- a contract should be interpreted in a way that makes it valid, not in a way that makes it go out. So this interpretation against the drafter does not apply in the context of the Federal Arbitration Act. Your Honor, that is my point. I understand the position. Thank you. Thank you, Your Honor. It's Michael Rubin for Plaintiff Blair. I agree that the place to start is the language of the arbitration agreement, as Judge Alsop did. And I think by focusing on that language, we can address why this case is controlled by the McGill rule and why the McGill rule is not preempted by the Federal Arbitration Act. Paula Blair is one of three plaintiffs in this case, and only one of her transactions is covered by an arbitration agreement. In that claim, she is seeking both individual relief and public relief. The public relief is simply cessation of the wrongful activity that Rent-A-Center is engaged in. That is, it overcharges its customers in violation of the Carnet Rental Purchase Act, the UCL, and the CLRA. Now, in the contract itself, the arbitration agreement, Rent-A-Center, this is in paragraph F, gives the arbitrator the authority to issue any relief, including injunctive relief, and any other legal and equitable remedy subject to the limitations of paragraph D. Paragraph D is obviously the individual arbitration paragraph. So what does that mean? That means that Rent-A-Center agreed that an arbitrator had full power to issue injunctive relief. That would be within the normal scope of an arbitration unless that arbitration relief, in the language of paragraph D, would, quote, affect Rent-A-Center account holders other than you. So, yes? Can I ask you to just pause there for just a moment? I'd like to know, what do you think you have to do to show, to get a public injunction in this case? Is there some specific standard or showing? Well, yes. Or do you just have to show a violation of the CLRA or the UCL? Well, but the reason we have to show a violation of one of these three statutes is because each of these statutes expressly satisfies the three requirements of McGill. There's an express statutory provision allowing injunctive relief. There's an express identification of the statute's public purposes. And there's availability of government enforcement on behalf of the public at large. Every injunction is not a public injunction. McGill recognized that in footnote 1. This Court on Bonk and Kilgore recognized that. Judge Alsup recognized that in saying there's no public injunction for usury. There must be a specific statute that authorizes that relief. And then what is the public injunction? The public injunction is nothing complex. How do you show irreparable harm, I guess, to the public? What kind of evidence would you need to introduce to show the balanced tips in your direction? I look to what McGill says. And McGill says that you can get a public injunction where there's a violation of 3513, which it said was a generally applicable contract defense, citing Little, if the primary purpose and effect of the requested injunction is to prohibit unlawful acts that threaten future injury to the general public. And that's page 955, quoting Broughton. And then again, in McGill, the actual complaint there, and I'm now at page 953, the complaint requested an injunction prohibiting Citibank from continuing to engage in its allegedly illegal and deceptive practice. So to respond more directly to your question, what we have to show is that the violation as it applied to this plaintiff, Ms. Blair, is one that is ongoing. And because of the nature of a Carnet Act, UCLA violation, it is by virtue of that violation a public violation that can't be the subject of contractual waiver under 3515 and McGill. Now, why does that mean that there's no FAA preemption? I think we've established that it's certainly well within the scope of the McGill rule. It does exactly what McGill does. It bans these public injunctions, even though it allows private injunctions. Well, the only real argument we've heard on the other side as to why there is FAA preemption is that this interferes with a fundamental attribute of arbitration. Now, counsel referred to that as one-on-one arbitration. That's not actually what the FAA says. The question is, and I think Judge McEwen, you asked about Sakab, yes, we certainly know that in a PAGA case there are additional complexities. The question I think the Court has to ask is, what are the incremental complexities in a given case that would be required for an arbitrator to issue a public injunction versus a private injunction, which, as I pointed out in paragraph F of the arbitration agreement here, Renta Center already agrees the arbitrator has authority to issue. The answer is there's really nothing. It's an individual case. Judge McGee asked the question of what do we have to show. We have to show it's an ongoing practice, but that's something that will be shown anyway. That doesn't add complexity. That doesn't implicate any of the conception concerns about a class, about notice, about due process. In terms of risk to the defendants, can you explain what damages would look like in this case, and in particular, are there any damages that relate to or specifically tie to the public injunction? No. Zero. Under the Carnet Act, there are statutory remedies provided based on the amount of the overcharge, and so it's essentially a restitutionary, like the UCL, a restitutionary statute. Ms. Blair and the other plaintiffs who have no arbitration agreements will be able to keep merchandise and get restitution for certain amounts under the statute. A public injunction is simply going to say to Renta Center, stop. Do not continue. In this case, do not add your internal freight charges in calculating your maximum prices, because that's not permitted under the statute. So from now on — Does the attorney fee availability differ under any of these remedies? No. You — Carnet Act does have a fee-shifting provision. So do the other two statutes have fee-shifting provisions. Whether you get a public injunction or not shouldn't affect the amount — I suppose to the extent the degree of success. Someone might argue for a multiplier in State court. It's less available in Federal court. But the underlying statutory framework is already — Yes. Consumers, so that the consumer — if the consumer wins, they can get, or the prevailing party can get. That's right. And it's lodestar-based. Multiplier is available. You could seek it on a common fund. But you're not going to be putting in any appreciable additional time, but more importantly, there's no additional complexity such that the Supreme Court was concerned about in Concepcion. Mm-hmm. The — this Court recognized in Ferguson that arbitrators have the power to issue injunctive relief, as Renta Center recognized here. I think the only other argument that we heard this morning was that there's something in paragraph D that requires some distinction between the relief that Judge Alsop awarded and the relief that's permissible. This is a contract in which a company has overreached in numerous regards. You can see it throughout the rental agreement, and that's obviously at the heart of our can charge consumers to obtain these products. They can't charge beyond the maximum statutory cap. By prohibiting public injunctions, what Renta Center has tried to do is simply allow itself to continue violating the law by stripping consumers of the right to get an order that says stop, which is what a public injunctive order is. Now, the concern that animates paragraph D, as I read it, is a concern that if you give — this is Renta Center's concern — if you give the arbitrator the power to tell Renta Center to stop, the arbitrator will exercise that power. And therefore, risking a runaway arbitration award, including a public injunction, was continued — continued of greater concern than coming to Federal court to get public injunctive relief. So that's why they say there in the last part, if there's a final judicial determination that applicable law precludes enforcement of this limitation on a particular claim for relief, and I certainly agree that claim for relief means cause of action claim for relief. That's what Rule 8a says. Then that claim and only that claim for relief must be severed and the judge has to decide it, and that's exactly what Judge Alsup did in this case. Judge Alsup said, except for usury, which, by the way, is now out of the case because there's now been a summary judgment order as to usury, but except as to usury where there's no public injunction, because Renta Center wrote this one-sided agreement that prohibited public injunctions in any forum, instead of writing it so that the arbitrator could issue a public injunction, which an arbitrator can, or that requests for public injunction and only that particular remedy go to the court, because RIC overreached and said, no, the entire claim is how it would rather be before court, we can take advantage of it, we read the language against the drafter as we should, and that's the way Judge Alsup read it, reasonably based on the actual text, and allowed Ms. Blair to pursue her other claims in court, where we have been litigating for the last year and a half. You have somewhat of a juxtaposition with your colleague as to what do we do under the Federal Arbitration Act with respect to ambiguities, presumably ambiguities that either bring something within or without of the Arbitration Act, and he says, throw out your state law notions of ambiguity at all, tips to arbitration. Do you agree with that? No. The FAA requires arbitration agreements to be treated like any other contract, no more, no less. So the traditional principles of contract construction, which include 3513, by the way, apply here no less than in any other contract. Otherwise, you are doing precisely what the Supreme Court in Prima Pena said you couldn't, which would be elevating arbitration agreements to a special level above any other contract. And here, it's the difference isn't between arbitrating and not arbitrating. What Rent-A-Center is trying to do is split the — it's actually saying that part of the remedy goes to court, part goes to arbitration, so I wouldn't even agree that the general presumption of arbitrability has any effect here because what they're trying to do is carve out part, but only a little part. But in response to your question, the general principles of contract construction apply here. Thank you. Thank you. You've used up a lot more than your time, but we'll give you a minute of rebuttal. Thank you, Your Honor. Your Honor, my colleague — I'm giving you a lot of questions. So now it's your turn. Thank you. Your Honor, my colleague said the only argument we made was that it interferes with the fundamental attributes of arbitration, and it certainly does, and that's one of the reasons why it's preempted. We also, certainly in our briefing, and we're going to hear a lot more of it today, stated that the Savings Clause does not apply under Section 2. My colleague said the FAA doesn't refer to one-on-one arbitration. Certainly Epic Systems does. And Epic Systems, one of the very recent pronouncements from the Court, addresses that issue and says agreements calling for one-on-one arbitration are protected, period. So this notion that the FAA doesn't protect one-on-one is incorrect. I also want to go back, finally, to the notion of Section D. There was one point I did not make earlier, and I was trying to. In the section regarding remedies, it said the arbitrator may award any remedies subject to paragraph D. That's critical because it shows that paragraph D does, in fact, deal with remedies, and the Court did not apply the proper FAA guidance, the extra push that all doubts should be resolved in favor of arbitration. Thank you. Thank you. I'd like to thank both counsel for your briefing and argument. The case of Blair v. Rent-A-Center is submitted.
judges: McKeown, W. Fletcher, Murguia